UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALICIA HAMILTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. C16-6024 BHS <br><br> ORDER DENYING PLAINTIFF'S MOTION TO ALLOW EXPERT TESTIMONY |

This matter comes before the Court on a motion to allow expert testimony filed by Plaintiff Alicia Hamilton, on behalf of herself and her minor child W.A. ("Hamilton"). Dkt. 25. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On December 14, 2018, Hamilton and Plaintiffs Milton Hamilton and Merceytee Oke (collectively "Plaintiffs") filed a complaint against Defendant United States of America ("Government") asserting claims for medical malpractice stemming from care Hamilton received at Madigan Army Medical Center ("Madigan"). Dkt. 1.

On February 6, 2013, Dr. Tarak H. Patel, LTC, M.C. performed a bilateral full-length thighplasty surgery on Hamilton at Madigan. Following the surgery, Hamilton had a post-operative complication which involved the dehiscence of one of her surgical wounds. Dr. Patel surgically repaired the deshisced wound with a skin graft. On February 15, 2013, Dr. Patel discharged Ms. Hamilton to go home. Dr. Patel then left for a scheduled vacation.

After returning home, Hamilton had a "syncopal episode." She fell and her surgical wounds opened, and Hamilton returned to Madigan's emergency room. Because Dr. Patel was on vacation, Madigan contacted surgeon Colonel Louis Walker, MD, to close the surgical wounds.

On July 13, 2018, Plaintiffs deposed Dr. Walker, who testified that he is retired from the military. When Plaintiffs' counsel asked Dr. Walker for his opinions related to the treatment of Ms. Hamilton, the Government's counsel objected. Citing 32 CFR 516.49, the Government's counsel instructed Dr. Walker not to answer questions which called for opinions. Although not directly relevant to the merits of the instant motion, Hamilton takes issue with the Government's counsel objecting on behalf of Dr. Walker because that counsel does not represent Dr. Walker, a retired military officer. Dkt. 25 at 2.

After the deposition, Dr. Walker called Plaintiffs' counsel and left a voicemail message. Plaintiffs' counsel returned Dr. Walker's call and asserts that Dr. Walker provided information as follows:

Dr. Walker believed that his deposition ended prematurely. He had opinions to express about the care that Ms. Hamilton received prior to the time that Dr. Walker was called to intervene.

Dr. Walker reviewed Ms. Hamilton's medical records prior to his testimony and he created a medical chronology. He stated that Ms. Hamilton's hematocrit and hemoglobin readings showed that Ms. Hamilton was anemic at the time of discharge. He stated that Ms. Hamilton should not have been discharged while anemic. He also stated that the anemia could have been corrected with a blood transfusion prior to discharge.

Dr. Walker stated that Ms. Hamilton's symptoms upon her return to Madigan suggested that she had a septic infection. The symptoms which support a diagnosis of septic infection include elevated pulse rate, complaints of dizziness and weakness, a mild fever, and labile blood pressure.

Dr. Walker stated that the records suggest that after Ms. Hamilton was admitted to the emergency room at Madigan after her syncopal event, medical personnel administered antibiotics prior to culturing her open surgical wounds. The antibiotics rendered future cultures meaningless, and that any claim by Madigan that cultures did not show the presence of sepsis are unreliable for this reason.

Dr. Walker stated that with Ms. Hamilton's pre-discharge medical history, including the first dehiscence of the surgical wound, she should not have been discharged without prophylactic antibiotics.

Dr. Walker believes that the likely explanation for why Ms. Hamilton fell at home, which resulted in dehiscence of the surgical wounds, was a syncopal event. He stated that both of the conditions identified above – anemia and mild septic infection – predispose a patient to have a syncopal event.

Dr. Walker stated that if he were asked about this, he would testify that it appears to him that Madigan erred in prematurely discharging Ms. Hamilton. Madigan should have waited until Ms. Hamilton was not anemic and should have provided her prophylactic antibiotics prior to discharging her. Madigan's decision to discharge Ms. Hamilton precipitously led to the syncope, fall, and bilateral dehiscence of the surgical wounds.

Dkt. 26, ¶ 5.

Based on this interaction, Hamilton asserts that Dr. Walker would like to provide expert testimony in addition to his factual testimony as a treating surgeon. Dkt. 25 at 6. On July 17, 2018, Hamilton filed the instant motion to allow Dr. Walker to provide

expert testimony. Dkt. 25. On July 30, 2018, the Government responded. Dkt. 27. On August 1, 2018, Hamilton replied. Dkt. 31.

Relevant to the instant motion, the Court set the expert disclosure deadline as March 19, 2018. Dkt. 17.

## II. DISCUSSION

The Government requests that the Court deny Hamilton's motion because (1) as a former officer of the United States, Dr. Walker may not provide expert testimony on behalf of Hamilton against the Government, (2) the expert disclosure deadline has passed, and (3) Dr. Walker's expert testimony would be cumulative of Hamilton's other medical expert. Dkt. 27. Regarding the last issue, Hamilton responds that the Court is without sufficient information to determine whether Dr. Walker's testimony is cumulative. Dkt. 31 at 3. The Court agrees. This failure also leaves the Court without sufficient information to determine whether Dr. Walker should be excluded as an expert offering testimony on behalf of a party in opposition to the Government. It is undisputed that Dr. Walker may testify as a percipient witness as a treating physician and that the Government objected to Dr. Walker's testimony during his deposition. Thus, the real problem is that the parties and the Court do not have the testimony that Dr. Walker would hypothetically provide. In light of this deficiency, the Court denies Hamilton's motion without prejudice because any decision would be an advisory opinion on potential, yet unknown, testimony.

In the reply, Hamilton asserts that the "best option is for the Court to issue an order allowing Plaintiff to discover Dr. Walker's expert opinions by allowing Plaintiff to

complete Dr. Walker's deposition." Dkt. 31 at 3. While the Court agrees with Hamilton, she failed to file a motion requesting such an order, and by presenting the argument in her reply, she deprived the Government of the due process guarantees of notice and an opportunity to be heard. Thus, the Court declines to issue such an order at this time. If, however, Hamilton did file such a motion, it would most likely be granted because Hamilton seems to have the better side of the argument that the Government's counsel had no right to instruct Dr. Walker to refuse to answer any opinion questions as a treating physician during his deposition. Dkt. 25 at 2.

According to the Court's usual practice, if a party has an objection to a question, the objection should be noted and the question should be answered as a preservation for a subsequent motion to exclude. In fact, the Court's initial orders explicitly directed the parties as follows:

> **Directions Not to Answer**. Directions to the deponent not to answer are improper. Advice not to answer may be appropriate on the ground of privilege or to enable a party or deponent to present a motion to the court or special master for termination of the deposition on the ground that it is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass or oppress the party or the deponent, or for appropriate limitations upon the scope of the deposition (e.g., on the ground that the line or inquiry is not relevant nor reasonably calculated to lead to the discovery of admissible evidence). When a privilege is claimed, the witness should nevertheless answer questions relevant to the existence, extent or waiver of the privilege, such as the date of the communication, who made the statement in question, to whom and in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement.

Dkt. 5, ¶ 2(c). Thus, the Government's objection, unless it provides an explanation that allows such an objection, would be in direct violation of an order of the Court. Counsel

is aware that the Court may reopen discovery for good cause. Fed. R. Civ. P. 16(b)(4). A direct violation of the Court's order would most likely establish good cause to depose Dr. Walker a second time. The Court finds that the best solution at this juncture is to order the parties to meet and confer regarding a second deposition. If necessary, Hamilton may file an appropriate motion and note it as a second Friday motion for relief from a deadline. Local Rules W.D. Wash. LCR 7(d)(2).

### III.  ORDER

Therefore, it is hereby **ORDERED** that Hamilton's motion to allow expert testimony (Dkt. 25) is **DENIED without prejudice**. The parties shall meet and confer regarding a second deposition of Dr. Walker as soon as possible.

Dated this 2nd day of October, 2018.

BENJAMIN H.SETTLE
United States District Judge